Rodney Steven **SHELINE,**
Plaintiff–Appellant,

v.

**DUN & BRADSTREET CORP.,**
Defendant–Appellee.

No. 91–1498.

United States Court of Appeals,
Fifth Circuit.

Dec. 5, 1991.

Jesse Green, Ray E. Green, Ray E. Green & Associates, Dallas, Tex., for plaintiff-appellant.

William John Bux, Paul M. Hood, Hughes & Luce, Dallas, Tex., for defendant-appellee.

Before GOLDBERG, SMITH, and DUHÉ, Circuit Judges.

GOLDBERG, Circuit Judge:

On cross-motions for summary judgment, the district court entered judgment for the defendant Dun & Bradstreet Corp., and against its former employee, plaintiff Rodney Sheline. Sheline was employed by Dun & Bradstreet as a sales representative until he voluntarily resigned in 1989 pursuant to a written agreement which entitled him to severance pay in exchange for his covenant not to compete. Shortly after his resignation, Sheline accepted employment with TRW, a competitor of Dun & Bradstreet's, and Dun & Bradstreet therefore discontinued the severance payments on account of Sheline's breach of the covenant not to compete. Thirteen months later, Sheline filed this lawsuit.

The district court held that the covenant not to compete was unenforceable under Texas law because it was overly broad; it contained no geographical area limitations. 1991 WL 128494. The court was persuaded that the covenant was not severable from the rest of the contract and held that the entire contract was unenforceable, thereby discharging Dun & Bradstreet of its obligation to pay Sheline the remainder of the severance payments. This appeal followed.

## BACKGROUND

Dun & Bradstreet employed Sheline as a salesperson for thirteen years, over which time Sheline developed a successful client

base and earned several awards for his outstanding performance. In the fall of 1988, Dun & Bradstreet informed Sheline that his sales territory and the value of his accounts would be reduced dramatically. Dissatisfied, Sheline inquired about his options. Dun & Bradstreet informed him that he could resign voluntarily under Dun & Bradstreet's voluntary resignation program. Sheline opted for that avenue. As part of the program, Sheline entered into a severance agreement by which he agreed to [1] terminate his employment voluntarily, [2] refrain from competing with Dun & Bradstreet for a period of one year, and [3] release any claims he had against Dun & Bradstreet. In exchange, Dun & Bradstreet agreed to make biweekly severance payments totalling $16,632.00.

Sheline was out of town on January 6, 1989 when the first severance check was due. He called his roommate, who informed him that the check had not arrived. Concluding, based on that alone, that Dun & Bradstreet was not intent on performing its part of the deal, Sheline accepted employment with TRW, a principal competitor of Dun & Bradstreet's, that same day. In fact, Dun & Bradstreet had mailed the severance check on January 6, 1989, and it is undisputed that Sheline received and deposited two severance checks in January 1989.

When Dun & Bradstreet learned that Sheline had accepted employment with TRW, it terminated the severance payments, informing Sheline by letter that his employment with TRW constituted a breach of the severance agreement. Sheline did not respond. Instead, he filed this lawsuit thirteen months later, in March 1990, three months after the covenant not to compete expired by its own terms.

On cross motions for summary judgment, the district court entered declaratory judgment in favor of Sheline on his claim that the covenant not to compete was unenforceable; entered judgment in favor of

Dun & Bradstreet on Sheline's claim of breach of contract; and found Dun & Bradstreet's counterclaim for a declaration of its rights under the contract to be moot. The court later denied Sheline's motion to reconsider.

## DISCUSSION

 As this case is on appeal from the entry of summary judgment, we must review the record *de novo. International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir.1991). All disputes of material fact must be resolved in favor of the nonmoving party below, plaintiff Sheline, and all inferences that may be reasonably drawn from those facts must be construed in a light most favorable to him. *Id.* Although this is an exacting standard, summary judgment is appropriate where the only issue before the court is a pure question of law. *Id.* This is such a case. The germane facts as developed in the record following adequate discovery are undisputed, and the only matter for resolution is a pure legal question: whether the unenforceable covenant not to compete in the severance agreement rendered that entire contract unenforceable.[1] Texas law governs this substantive legal question.

### A.

 That the covenant not to compete is unenforceable as a matter of law is indubitable; both parties on appeal agree that the district court correctly held that the absence of a geographical area limitation rendered the covenant not to compete unenforceable. *See generally DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 682 (Tex.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 755, 112 L.Ed.2d 775 (1991); *Juliette Fowler Homes v. Welch Associates*, 793 S.W.2d 660, 662 (Tex.1990); Alexandra Sowell, Comment, *Covenants Not to Compete: A Review of the Governing Standards of Enforceability after DeSantis v. Wackenhut Corp. and the Legislative*

1. The district court also found against Sheline on his fraud claim, but he does not appeal that portion of the summary judgment order. Sheline does challenge the district court's denial of

attorney's fees. We find no merit in this contention, especially in light of our disposition of the primary issue.

*Amendments to the Texas Business and Commerce Code*, 45 Sw.L.J. 1009 (1991). The district court held that the entire contract was thereby rendered unenforceable. The court reasoned that the covenant not to compete was not severable because only Sheline's promise not to compete had any real value to Dun & Bradstreet. The court observed that the other promises made by Sheline—to terminate his employment voluntarily and release any claims he had against Dun & Bradstreet—were of negligible value to Dun & Bradstreet because Sheline was employed at-will and had no claims against Dun & Bradstreet.[2] According to the district court, the biweekly severance payments were promised in consideration for the covenant not to compete, and therefore, that promise could not be enforced once the covenant not to compete was deemed unenforceable.

Sheline takes issue with the district court's conclusion, arguing that it would be unjust to allow Dun & Bradstreet to escape its obligation under the severance agreement on account of Dun & Bradstreet's inclusion of an overly broad covenant not to compete. The authority which offers Sheline the greatest support for his position, *Frankiewicz v. National Comp Associates*, 633 S.W.2d 505 (Tex.1982), is a Texas case factually similar to the instant one. In *Frankiewicz*, the court found a covenant not to compete to be unenforceable on account of its failure to contain a territorial limitation. The plaintiff, Frankiewicz, was an insurance agent under contract with the defendant insurance agency, NCA. The contract provided that upon his departure, Frankiewicz would continue to receive renewal commissions on his accounts so long as he did not compete with NCA.

Following his departure from NCA, Frankiewicz accepted employment with another insurance agency. NCA then ceased paying Frankiewicz his renewal commissions due under the contract, on account of Frankiewicz's alleged breach of the covenant not to compete. Frankiewicz sued for his renewal commissions. Even though

Frankiewicz admitted that he was selling insurance for another insurance company in violation of the covenant not to compete, the court held in his favor. The court reasoned that because the covenant not to compete contained no territorial limitation, it was unenforceable, and therefore, "it [could] not provide the basis upon which NCA [could] suspend Frankiewicz's commissions on renewal premiums any more than it could support a claim for damages on the part of NCA." *Id.* at 507–08.

The district court in the instant case was not persuaded that *Frankiewicz* controlled. According to the district court, *Frankiewicz* unconvincingly "assumed, without addressing the issue, that the invalidity of a covenant not to compete does not affect the rest of a contract." District court op. at 7. The district court relied instead on the general principles of contract severability: "[S]everability is governed by the intent of the parties, 'as evidenced by the language of the contract,' and that the operative question is 'whether or not the parties would have entered into the agreement absent the [unenforceable] parts.'" *Id.* (citing *McFarland v. Haby*, 589 S.W.2d 521, 524 (Tex.Civ.App.1979, writ ref'd n.r.e.)). The district court distinguished *Frankiewicz* on the basis that the "post-termination payments were renewal commissions on insurance policies employee had sold prior to termination, and were thus not given solely for promise not to compete." *Id.* at 8–9 and n. 5. The court also distinguished *Hanks v. GAB Business Services, Inc.*, 644 S.W.2d 707, 708 (Tex.1982) and *Peat, Marwick, Mitchell & Co. v. Sharp*, 585 S.W.2d 905, 907–08 (Tex.Civ.App.1979, writ ref'd n.r.e.), on similar grounds.

We are persuaded that the district court correctly distinguished *Frankiewicz*. The covenant not to compete and the severance compensation clause were mutually dependent promises, and as such, the unenforceability of one necessarily rendered the other unenforceable. *See Alston Studios Inc. v. Lloyd V. Gress & Associates*, 492

---

**2.** At oral argument before this court, Sheline conceded that he had no potential claims against Dun & Bradstreet.

F.2d 279, 285 (4th Cir.1974) ("The severance compensation clause, the principal consideration for the covenant, is so interwoven with the void portion of the agreement to be unenforceable."). Although the Texas Supreme Court did not speak in terms of mutually dependent covenants in *Frankiewicz*, it did in connection with a covenant not to compete in *Hanks v. GAB Business Services, Inc.*, 644 S.W.2d 707, 708 (Tex.1982). In *Hanks*, the court enforced the promisee's obligation to pay a final installment payment because that provision of the contract was independent of the promisor's covenant not to compete. *Id.* In contrast, we find that Dun & Bradstreet's promise to make severance payments to Sheline was dependent upon Sheline's promise to refrain from competing.

It is true that the severance agreement, by its terms, obligated Sheline to do more than merely refrain from competing. He promised to resign voluntarily and forego any claims against Dun & Bradstreet. Those promises, however, were of little (if any) value to Dun & Bradstreet: Sheline was an at-will employee and had no potential discrimination claims against Dun & Bradstreet. *Cf. Martin v. Credit Protection Ass'n, Inc.*, 793 S.W.2d 667, 670 (Tex. 1990) ("continuation of an employment at-will relationship does not constitute independent valuable consideration to support the covenant [not to compete]"). The heart of the consideration was Sheline's promise not to compete with Dun & Bradstreet.

We conclude, therefore, that the covenant not to compete and the severance compensation clause were mutually dependent and that the unenforceability of the former rendered the latter unenforceable. Dun & Bradstreet's reciprocal obligations under the contract were excused for lack of consideration. *Cf. id.* (covenant not to compete must be supported by independent valuable consideration).

### B.

Recognizing the weakness of his position—having failed to abide by the terms of the covenant not to compete and then filing suit—Sheline contends that only the *over-broad* portion of the covenant not to compete was unenforceable: that is, the court should have construed the covenant not to compete as if it had a reasonable geographical limitation so as to render it, and the remainder of the severance agreement, enforceable. In this connection, he maintains that although TRW is in fact a direct competitor of Dun & Bradstreet's, his employment with TRW would not have infringed upon a geographically limited covenant not to compete. He avers that his sales territory with TRW did not sufficiently overlap with his sales territory with Dun & Bradstreet. In essence, he asks this court to reform the contract by rewriting the covenant to include a reasonable geographical limitation, and find that his employment with TRW did not amount to a breach of that reformed covenant not to compete.

Sheline is correct that Texas law permits the reformation of an overly broad covenant not to compete in order to make it reasonable and hence enforceable. *See* Tex.Bus. & Com.Code Ann. §§ 15.50–15.51. Nevertheless, it is well settled that "[f]or purposes of an action for damages, the enforceability of the covenant not to compete will be determined as written and may not be modified to render it reasonable and enforceable." *Juliette Fowler Homes*, 793 S.W.2d at 663. This is not a reformation case. Dun & Bradstreet did not bring this action to seek the reformation of the overly broad covenant not to compete; rather, Sheline filed this lawsuit for money damages based on Dun & Bradstreet's alleged breach of contract. In any event, reformation is a remedy that would have been available to the promisee, Dun & Bradstreet, not to the promisor, Sheline. *See* Tex.Bus. & Com.Code Ann. §§ 15.50–15.51; *DeSantis*, 793 S.W.2d at 682.

Sheline argues in the final instance that we must be cognizant of the implications of a decision in favor of Dun & Bradstreet. He suggests that to hold in favor of Dun & Bradstreet would reward it for drafting a severance agreement with an unenforceable covenant not to compete. He prophesies that employers will include these unenforceable clauses so that they can later

escape their obligation to make severance payments. He frets that our decision might be understood to suggest that a promisee to a covenant not to compete is excused *ab initio* from its obligations under the contract, *even if* the promisor abides (needlessly) by the covenant without knowledge that the covenant is unenforceable. Let us allay his fears.

A promisee waives its right to rescind on a contract if it "elects to treat a contract as continuing." *Hanks,* 644 S.W.2d at 708. Thus, had Sheline abided by the terms of the severance agreement and refrained from competing, Dun & Bradstreet could not have refused to make the agreed upon severance payments on the ground that the covenant was unenforceable. Having treated the agreement as continuing and effective, Dun & Bradstreet would have been obliged to honor its part of the bargain. *See id.* ("A party who elects to treat a contract as continuing deprives himself of an excuse for ceasing performance on his own part."). That is plainly not this case.

The judgment of the district court is AFFIRMED.