**JOHN R. RAY & SONS, INC., Appellant,**

v.

**Robert Michael STROMAN, Appellee.**

**No. 14–94–01065–CV.**

Court of Appeals of Texas,
Houston (14th Dist.).

April 18, 1996.

Rehearing Overruled June 27, 1996.

David A. Carp, Houston, Mike Johanson, Houston, for appellant.

Marc A. Young, Houston, T. Michael Neville, Houston, for appellee.

Before YATES, FOWLER and O'NEILL, JJ.

## OPINION

O'NEILL, Justice.

This is an appeal from a summary judgment in favor of appellee in a contract dispute. The trial court found that the contract contained an unenforceable covenant not to compete and that the appellee, Robert Michael Stroman ("Stroman"), was entitled to 104 shares of common stock in the appellant company, John R. Ray & Sons, Inc. ("Ray & Sons"). Ray & Sons brings five points of error arguing the trial court erred in: (1) finding that Stroman was entitled to the stock and that his claim was not barred by the Texas Business Corporations Act; (2) declaring sections of the non-compete agreement to be unreasonable restraints of trade and therefore unenforceable; and (3) refusing to reform the unenforceable sections of the contract upon which Ray & Sons based its claims for relief. We modify the portion of the trial court's judgment that awards ownership of the stock to Stroman, and order that he take nothing. We affirm the remainder of the trial court's judgment holding the covenant not to compete unenforceable as an unreasonable restraint of trade.

## Background

Ray & Sons is a family owned insurance agency. The company hired Stroman as an insurance agent in 1983 pursuant to an employment agreement that extended through December 31, 1987. On December 31, 1987, Stroman and Ray & Sons executed a new agreement, entitled "Non–Competition Agreement" (the "Agreement"). The Agreement provided that Stroman would not engage in or have an interest in any business that sold insurance policies or engaged in the insurance agency business within Harris County and all adjacent counties for a period of five years from the date of the Agreement. It also provided that Stroman would never solicit or accept, or assist or be employed by any other party in soliciting or accepting, insurance business from any of Ray & Sons' accounts. In consideration for entering into the Agreement, Stroman was to receive a ten percent ownership interest in the company, which was equivalent to 104 shares of common stock (the "stock"). The company's stock transfer ledger indicates that the stock was issued on December 31, 1987. A stock certificate was prepared in Stroman's name, but it was retained by Ray & Sons and not actually placed in Stroman's possession.

In June, 1992, four and one-half years after execution of the Agreement, Stroman left Ray & Sons and accepted employment with another insurance agency in Harris County, Texas. Although Stroman tendered his shares to Ray & Sons pursuant to a shareholders agreement, the company chose not to purchase the shares. Ray & Sons took the position that Stroman had breached

the agreement and was not entitled to the stock. Stroman filed suit seeking a declaratory judgment that the stock issued in his name should be delivered to his possession. In June, 1993, Stroman amended his petition adding various causes of action, including a claim that the covenant not to compete was unenforceable. Ray & Sons filed an answer and counterclaim alleging, among other things, failure of consideration.

Both Stroman and Ray & Sons filed motions for partial summary judgment. On September 12, 1994, the trial court signed an amended interlocutory summary judgment and found that: (1) Sections 1.1 and 1.2 of the Non–Competition Agreement are unreasonable restraints of trade and are unenforceable; (2) the unenforceable sections of the Agreement need not be reformed because the issues regarding reformation are moot; (3) Ray & Sons take nothing on its claim for breach of the Agreement; and (4) Stroman is entitled to 104 shares of stock of Ray & Sons, and his claim is not barred by article 2.16 of the Texas Business Corporation Act[1] or Article XIII, § 6 of the Texas Constitution.[2] After the parties disposed of the remaining issues from the partial summary judgment by way of settlement, the amended interlocutory summary judgment was made a final judgment and forms the basis of this appeal.

### Standard of Review

■■■■ The appropriate standard to be followed when reviewing a summary judgment is well-established:

1. the movant for summary judgment has the burden of showing that there is no genuine issue of material fact and that it is entitled to summary judgment as a matter of law;

2. in deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true; and

3. every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in its favor.

*Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548–49 (Tex.1985); *Karl v. Oaks Minor Emergency Clinic*, 826 S.W.2d 791, 794 (Tex.App.—Houston [14th Dist.] 1992, writ denied). When both parties file motions for summary judgment and one is denied and the other is granted, the reviewing court rules on all issues presented and may review the denial and render judgment if the appealing party complains of both the granting of the opponent's motion and the denial of his own. *Jones v. Strauss*, 745 S.W.2d 898, 900 (Tex.1988); *Ridgway's Inc. v. Payne*, 853 S.W.2d 659, 662 (Tex.App.—Houston [14th Dist.] 1993, no writ). Further, when the parties do not dispute the facts, we review all legal questions presented. *Guynes v. Galveston County*, 861 S.W.2d 861, 862 (Tex. 1993).

### Validity of the Covenant Not To Compete

■■■■ In point of error three, Ray & Sons challenges the trial court's finding that the covenant not to compete was an unreasonable restraint of trade and therefore unenforceable. The validity and enforceability of covenants not to compete are governed by sections 15.50–15.52 of the Texas Business and Commerce Code. *See* TEX.BUS. & COM. CODE ANN. §§ 15.50–15.52 (Vernon Supp. 1996) (enacted 1989, amended 1993). The statute is retroactive, therefore it applies to the Non–Competition Agreement. *See id.;* *Butts Retail, Inc. v. Diversifoods, Inc.*, 840 S.W.2d 770, 773 (Tex.App.—Beaumont 1992, writ denied). Section 15.50 provides:

a covenant not to compete is enforceable if it is ancillary to or part of an otherwise enforceable agreement at the time the agreement is made to the extent that it contains limitations as to time, geographical area, and scope of activity to be restrained that are reasonable and do not impose a greater restraint than is necessary to protect the goodwill or other business interest of the promisee.

TEX.BUS. & COM.CODE ANN. § 15.50. This section adopted the Texas common law in many respects. We may therefore look to

---

1. TEX.BUS.CORP.ACT.ANN. art. 2.16 (Vernon Supp. 1996).

2. TEX. CONST. art. XIII § 6.

cases prior to the statute's enactment for guidance. *Peat Marwick Main & Co. v. Haass,* 818 S.W.2d 381, 388 (Tex.1991).

■ A covenant not to compete is a restraint of trade and unenforceable as a matter of public policy unless it meets a reasonableness standard. *Juliette Fowler Homes v. Welch Assoc.,* 793 S.W.2d 660, 662 (Tex.1990); *Martin v. Credit Protection Ass'n,* 793 S.W.2d 667, 668 (Tex.1990). Whether an agreement not to compete is a reasonable restraint of trade is a question of law for the court. *Haass,* 818 S.W.2d at 388; *Martin,* 793 S.W.2d at 668–69; *Butts Retail, Inc.,* 840 S.W.2d at 773 (citing *Henshaw v. Kroenecke,* 656 S.W.2d 416, 418 (Tex.1983)). Restraints are unreasonable if they are broader than necessary to protect the legitimate interests of the employer. *DeSantis v. Wackenhut Corp.,* 793 S.W.2d 670, 681–82 (Tex.1990); *Henshaw,* 656 S.W.2d at 418. The Texas Supreme Court has held that an industry-wide exclusion is unreasonable. *Haass,* 818 S.W.2d at 386–88. The court has also held that a covenant not to compete unlimited as to time is unreasonable. *Juliette Fowler Homes,* 793 S.W.2d at 662–63; *Caraway v. Flagg,* 277 S.W.2d 803, 805 (Tex. App.—Dallas 1955, writ ref'd n.r.e.). In the case of covenants applied to a personal services occupation, such as that of a salesman, a restraint on client solicitation is overbroad and unreasonable when it extends to clients with whom the employee had no dealings during his employment. *Haass,* 818 S.W.2d at 386–88; *Daytona Group of Texas, Inc. v. Smith,* 800 S.W.2d 285, 288 (Tex.App.—Corpus Christi 1990, writ denied).

■ In the present case, Section 1.1 of the Agreement created an unenforceable industry-wide exclusion on Stroman's ability to work in the insurance business in and around Harris County. *See Haass,* 818 S.W.2d at 386–88. Section 1.2 is similarly unenforceable because it is unlimited as to time and extends to customers with whom Stroman had no association while he was working for Ray & Sons. *See Juliette Fowler Homes,* 793 S.W.2d at 662–63; *Haass,* 818 S.W.2d at 386–88. Furthermore, Ray & Sons has not shown that the limitations were necessary to protect the goodwill or business interests of

the company. *See DeSantis,* 793 S.W.2d at 681–82. Therefore, we agree with the trial court that the covenant not to compete is an unreasonable restraint of trade. Point of error number three is overruled to the extent it challenges this finding of the trial court.

■ Once a covenant not to compete has been held to be unreasonable, the court may be required to reform the covenant to make it valid. TEX.BUS. & COM.CODE ANN. § 15.51(c). In points of error four and five, Ray & Sons contends the trial court erred in refusing to reform the unenforceable covenants.

■ The covenant contained in Section 1.1 of the Agreement expired in 1992, prior to judgment, therefore any reformation of that provision by the trial court would have been an exercise in futility. Section 1.2, on the other hand, had not expired because it was unlimited as to time. Arguably, therefore, the court was required to reform the covenant "to the extent necessary to cause the covenant to meet the criteria specified by Subdivision (2) of Section 15.50." TEX.BUS. & COM.CODE ANN. § 15.51(c). Subdivision (2) of Section 15.50 provides that a covenant not to compete is enforceable to the extent that it:

> contains reasonable limitations as to time, geographical area, and scope of activity to be restrained *that do not impose a greater restraint than is necessary to protect the goodwill or other business interest of the promisee.*

TEX.BUS. & COM.CODE ANN. § 15.50(2) (emphasis added). Where the agreement containing the covenant involves the promisor's rendition of personal services, as in the present case, the burden is on the promisee, Ray & Sons, to establish that the covenant meets the Section 15.50(2) criteria. *See* TEX.BUS. & COM.CODE ANN. § 15.51(b). However, as already noted, Ray & Sons has failed to show what, if any, reformation of the covenant would be reasonable and necessary to protect the goodwill or other business interest of the company. *See DeSantis,* 793 S.W.2d at 685. Unless such a showing is made, the covenant cannot be reformed. *Daytona Group of Texas, Inc. v. Smith,* 800 S.W.2d 285, 290 (Tex. App.—Corpus Christi 1990, writ denied) (cit-

ing *DeSantis,* 793 S.W.2d at 685). Because Ray & Sons failed to make this required showing, the trial court correctly refused to reform Section 1.2 of the agreement. Points of error four and five are overruled.

### Stroman's Right to the Stock

In points of error one, two and three, Ray & Sons contends the trial court erred in awarding ownership of the stock to Stroman for two reasons: (1) the issuance of the stock and the covenant not to compete are mutually dependent and therefore the failure of one renders the entire contract unenforceable; and (2) the claim is barred by article 2.16 of the Texas Business Corporation Act and Article XIII, § 6 of the Texas Constitution.

■■■■ Whether or not the invalidity of a covenant not to compete affects the rest of a contract depends upon whether the remaining provisions are independent or mutually dependent promises. *Hanks v. GAB Business Serv., Inc.,* 644 S.W.2d 707, 708 (Tex. 1982). Whether covenants are mutually dependent is determined by the intent of the parties at the time the contract was formed, as evidenced by the language of the contract. *Greenstein v. Simpson,* 660 S.W.2d 155, 160 (Tex.App.—Waco 1983, writ ref'd n.r.e) (citing *Nutt v. Members Mut. Ins. Co.,* 474 S.W.2d 575 (Tex.Civ.App.—Dallas 1971, writ ref'd n.r.e.)). If the intent of the parties is unclear, the court will presume the promises are dependent rather than independent. *Id.* Where each covenant is such an indispensable part of what both parties intended that the contract would not have been made without the covenant, they are mutual conditions and dependent, in the absence of clear indications to the contrary. *Id.* at 160 (citing 17A C.J.S. *Contracts* § 344 (1963)). The relevant inquiry is whether or not the parties would have entered into the agreement absent the unenforceable part. *Frankiewicz v. National Comp. Assoc.,* 633 S.W.2d 505, 507–08 (Tex.1982). The issue of severability is a question of law. *Rogers v. Wolfson,* 763 S.W.2d 922, 924 (Tex.App.—Dallas 1989, writ denied).

■■■ In the present case, the Agreement indicates that the parties intended the issuance of stock and the covenant not to compete to be mutually dependent. The Agreement itself is entitled "Non–Competition Agreement." The "Recitals" contained in the Agreement, which precede the actual covenants, state that the company is issuing stock to Stroman and providing him with employment and special knowledge and training. The Recitals further state that *"to induce the [c]ompany to consummate said acts* ... Mr. Stroman has agreed to covenants hereunder ... regarding certain future activities and actions by Mr. Stroman *in consideration for the [c]ompany granting him employment and an ownership interest in the [c]ompany."* (emphasis added). Following the Recitals is Article I, subtitled "Noncompetition and Nondisclosure Covenants." Sections 1.1 and 1.2 of Article I contain the covenants not to compete previously discussed and determined to be unenforceable. Section 1.5, subtitled "Consideration," provides, "[i]n consideration of Mr. Stroman entering into this Noncompetition Agreement, he is being issued a ten percent ownership interest in the [c]ompany...." Thus the language of the agreement clearly indicates the parties intended the stock to issue in exchange for Stroman's covenant not to compete.

■■■ Stroman argues that the promise regarding issuance of stock is an independent and severable covenant because it was supported by more than the covenant not to compete. Stroman points to Section 1.3 of the Agreement, which prohibits him from disclosing the company's trade secrets or confidential information. However, we do not believe the confidentiality provision constitutes independent valuable consideration to support the issuance of company stock. "In the area of confidential relationships between ... employers and employees ... the injured party is not required to rely upon an express agreement to hold the trade secret in confidence." *Hyde Corp. v. Huffines,* 158 Tex. 566, 314 S.W.2d 763, 770 *cert. denied,* 358 U.S. 898, 79 S.Ct. 223, 3 L.Ed.2d 148 (1958). The law protects Ray & Sons' trade secrets and confidential information whether or not a confidentiality agreement exists. *Miller Paper Co. v. Roberts Paper Co.,* 901 S.W.2d 593, 600–01 (Tex.App.—Amarillo

1995, n.w.h.); *Rugen v. Interactive Business Sys.*, 864 S.W.2d 548, 551 (Tex.App.—Dallas 1993, no writ); *Executive Tele–Communication Sys. v. Buchbaum,* 669 S.W.2d 400, 403 (Tex.App.—Dallas 1984, no writ). Therefore, the confidentiality provision could have been of no independent value to Ray & Sons when the Non–Competition Agreement was signed. Promises of negligible value will not support severability. *Sheline v. Dun & Bradstreet,* 948 F.2d 174, 177 (5th Cir.1991).[3]

▮▮▮▮ Stroman argues that Section 2.1 of the Agreement, which contains a severability clause, prevents the failure of the covenant not to compete from affecting Stroman's ownership of the stock. It is true that the purpose of a severability clause is to allow a contract to stand when a portion has been held to be invalid. However, when the severed portion is integral to the entire contract, a severability clause, standing alone, cannot save the contract. *Budge v. Post,* 544 F.Supp. 370, 382 (N.D.Tex.1982) (citing *Patrizi v. McAninch,* 153 Tex. 389, 269 S.W.2d 343, 347–48 (1954)). In the present case, Stroman's covenant not to compete was integral to the Agreement giving him an ownership interest in the company. Since the primary purpose of the Agreement was the covenant not to compete, it cannot be severed without adversely affecting the issuance of stock given in consideration therefor. "[The severability clause] does not have the effect of making an otherwise dependent contract into one whose provisions are independent and divisible." *Id.*

▮▮▮ Stroman argues that if he is denied ownership of the stock he will have forfeited a benefit under the contract as a result of Ray & Son's unreasonable and unenforceable restraint of trade, a result prohibited by Texas law. Stroman cites *Peat Marwick Main & Co. v. Haass,* 818 S.W.2d 381 (Tex.1991); *Frankiewicz v. National Comp. Assoc.,* 633 S.W.2d 505 (Tex.1982); and *Peat, Marwick, Mitchell & Co. v.*

*Sharp,* 585 S.W.2d 905 (Tex.Civ.App.—Amarillo 1979, writ ref'd n.r.e.) in support of his argument. These cases involved contractual provisions that called for forfeiture of benefits in the event of breach of the covenant not to compete. The courts in those cases determined that the forfeiture provisions were akin to liquidated damages clauses. Because it is well-established that an action in damages will not lie for breach of an unenforceable covenant, *see e.g. Weatherford Oil Tool v. Campbell,* 161 Tex. 310, 340 S.W.2d 950 (1960), the promisors in those cases were allowed to retain their contractual benefits despite the failure of the covenants not to compete. How, then, do we determine whether forfeiture of a benefit conferred by a contract is prohibited as an unlawful liquidated damage or mandated because it is mutually dependent upon the failed covenant? We believe the answer to this question hinges upon whether or not the consideration given for the covenant was independently derived. In other words, where part of the consideration given to the employee in exchange for the covenant not to compete is something to which the employee would have been otherwise entitled, the consideration could not have been given solely for the promise not to compete and cannot be mutually dependent thereon.

For example, in *Frankiewicz v. National Comp. Ass.,* 633 S.W.2d at 506, an insurance agent brought suit to recover renewal commissions under an agency contract. The contract provided that upon its termination, the agent was entitled to commissions on insurance renewal premiums if the renewals were considered vested under the terms of the contract. The agency contract also included a covenant not to compete and provided that, if the covenant was breached, the agent would forfeit his right to commissions on renewal premiums. It was undisputed that Frankiewicz' commissions on renewal premi-

---

**3.** Stroman also argues that his payment of $104, representing the par value of the stock, was independent consideration separate and apart from the covenant not to compete. However, we believe the mere payment of $104 in par value was of negligible independent value to the company. The real value of the stock was the ten percent ownership interest that it conferred, which was clearly given in exchange for the covenant not to compete. Therefore, we do not believe Stroman's payment of par value for the stock supports severability. *See Sheline,* 948 F.2d at 177.

ums were vested at the time he terminated his employment with the company. When Frankiewicz accepted employment with a competing agency, the company, relying on the contract, ceased paying renewal commissions to Frankiewicz. The Texas Supreme Court held that the covenant not to compete was invalid, but determined that Frankiewicz was nevertheless entitled to receive his renewal commissions. The court reasoned that, because the commissions had already vested under the contract, allowing forfeiture of the commissions would be tantamount to awarding the company damages on an unenforceable contract, a result prohibited under Texas law. *Id.* at 507; *see also Weatherford Oil Tool Co.,* 340 S.W.2d at 953. Similarly in *Sharp,* the court disallowed forfeiture of accrued benefits *otherwise recoverable* under the agreement between the parties when the covenant not to compete failed. 585 S.W.2d at 908.

The *Haass* case, also relied upon by Stroman, is likewise distinguishable. There the court reviewed a comprehensive partnership agreement that arose out of the merger of two accounting firms. The agreement provided that a withdrawing partner who competed with the firm would have to pay damages, to be charged against the withdrawing partner's capital account. Haass withdrew and performed services for clients of the firm. The firm sued for damages, and Haass sought recovery of his capital account. The court held that the liquidated damages provision of the partnership agreement had the same effect on competition as a covenant not to compete and should be judged by the same reasonableness standards. Although the court found the liquidated damages provision to be unenforceable, Haass was allowed to recover his capital account as a benefit to which he was otherwise entitled under the partnership agreement.

We believe the case of *Sheline,* cited by Ray & Sons, is more analogous to the present case. There Sheline signed a severance agreement with Dun & Bradstreet whereby, in return for periodic severance payments, he voluntarily resigned, agreed not to compete, and executed a release of all claims. Sheline subsequently accepted employment with a competitor in violation of the covenant, and Dun & Bradstreet withheld the periodic payments. The covenant not to compete was held to be unenforceable. The court determined that the covenant was not severable because only Sheline's promise not to compete had any real value to Dun & Bradstreet. Because Sheline was an at-will employee, his promise to resign voluntarily was of no independent value. Additionally, because Sheline had no claims against Dun & Bradstreet, his release of claims had no independent value. The biweekly severance payments were promised solely in consideration for the covenant not to compete, therefore that promise could not be enforced once the covenant failed. *Id.* at 176. Since the two promises were mutually dependent, the failure of one caused the failure of the other.

In the present case, Ray & Sons received nothing of real value in exchange for its stock other than the covenant not to compete. Likewise, Stroman was not otherwise entitled to the stock separate and apart from the Agreement. We therefore find that the covenant not to compete was indispensable to ownership of the stock. Because the covenant not to compete is unenforceable, the stock transfer must also fail. We sustain that portion of point of error three regarding mutuality of the covenants under the Agreement.

Ray & Sons argues that Stroman's claim to the stock is also barred by article 2.16 of the Texas Business Corporation Act and Article XIII, § 6 of the Texas Constitution, which prohibit the issuance of stock until the full consideration agreed to in exchange therefor has been paid. Because we have found that the stock transfer failed along with the unenforceable covenant, we decline to address this issue. Nor do we address Ray & Sons' arguments that Stroman's alleged breach of the covenants excused Ray & Sons' failure to issue the stock.

We modify the portion of the trial court's judgment that awards ownership of the stock to Stroman, and order that he take nothing.[4]

4. Stroman contends that we may not modify the  decision regarding Stroman's stock ownership

We affirm the remainder of the trial court's judgment holding the covenant not to compete unenforceable as an unreasonable restraint of trade.

because Ray & Sons' cross-motion for summary judgment only sought a declaration that the covenant not to compete was unenforceable. However, Ray & Sons' motion for reconsideration specifically raised the issue regarding mutuality of covenants, and Stroman fully responded to that issue in his response to the motion for reconsideration. Stroman's motion for entry of judgment nunc pro tunc and motion for reconsideration specifically requests the court to consider in its amendment of the interlocutory summary judgment "all summary judgment evidence, arguments, and authorities submitted with the Motion for Summary Judgment, *Motions for Reconsideration* or Rehearing, and any responses thereto filed by either party." (emphasis added). This request was granted by the court in the Amended Interlocutory Summary Judgment. Therefore, Stroman's contention that there is no basis for rendition or modification of judgment is without merit.