Opinion issued May 13,
2010.



 

In The

Court of Appeals

For The

First District of Texas

 

———————————

 

NO. 01-08-00770-CV

 

———————————

 

MEMC Electronic Materials,
Inc. and MEMC Pasadena, Inc.,
Appellants

 

V.

 

Albemarle Corporation,
Lexington Insurance Company, and Travelers Property Casualty Group, Appellees



 



 

On Appeal from the 55th District Court

Harris County, Texas



Trial
Court Case No. 2002-59930-A

 



 

O P I N I O N

 

          This appeal concerns
whether a party to an indemnification agreement can obtain indemnification for a
dispute regarding the scope and meaning of the indemnification agreement,
specifically, whether the agreement provides for indemnification of another
matter.  Appellants, MEMC Electronic
Materials, Inc., and MEMC Pasadena, Inc. (collectively “MEMC”), appeal the
trial court’s rendition of summary judgment in favor of appellees Albemarle
Corporation, Lexington Insurance Company, and Travelers Property Casualty group
(collectively “Albemarle”).  

          In this appeal following remand of an
earlier appeal concerning the same agreement between these two parties, MEMC
raises two issues.  MEMC contends that the
trial court erred by rendering summary judgment in favor of Albemarle by
determining that MEMC was not entitled to indemnity or damages for breach of
contract and by denying MEMC’s motion for summary judgment for indemnity and
breach of contract damages.  MEMC makes
two contentions concerning these two issues. 
First, MEMC contends it is entitled to damages in the form of attorney’s
fees for its defense of this suit in which Albemarle sought indemnity from MEMC
for Albemarle’s indemnification of Ethyl Corporation.  Second, MEMC asserts it is entitled to
damages for attorney’s fees for its defense of the Damewood litigation.[1]  We conclude that Albemarle does not owe indemnity
to MEMC because the indemnity agreement with Albemarle does not provide for
attorney’s fees in this situation and the request for attorney’s fees for
MEMC’s defense of the Damewood litigation
was not made in a motion for summary judgment. 
We affirm.

Background

          Ethyl Corporation (“Ethyl”) designed and built a
polysilicon manufacturing plant located in Pasadena, Texas.  In 1994, Ethyl created Albemarle as a
separate company and transferred various businesses, including the plant, to
Albemarle’s ownership and control.  The
transfer was under a “Reorganization and Distribution Agreement.”  Ethyl and Albemarle also entered into an
“Indemnification Agreement,” under which Albemarle agreed to “indemnify, defend
and hold harmless Ethyl . . . from and against any and all
Indemnifiable Losses of the Ethyl Indemnitees arising out of or due to the
failure or alleged failure of Albemarle or any of its Affiliates to pay,
perform, or otherwise discharge in due course any of the Albemarle
Liabilities.” 

          In 1995, Albemarle sold the plant to
MEMC pursuant to an “Asset Purchase Agreement.” 
The closing date for the agreement was July 31, 1995.  Under a separate agreement, MEMC and Albemarle
agreed that Albemarle would continue to operate the plant.

          The Asset Purchase Agreement describes
the transfer of the plant and other assets and liabilities in Sections 3.3 and
3.4.  Some assets and liabilities were
specifically excluded from the transfer, and only certain liabilities were
assumed by MEMC.  Section 3.4(b) specifies
that MEMC “shall not assume any other Liabilities of Seller whatsoever” except
“those Liabilities specifically assumed” in Section 3.4(a).  Section 3.4(a) does not mention the agreement
between Ethyl and Albemarle, nor was that agreement a contract that was assumed
by MEMC in the accompanying Schedule 3.4(a)(i). 
The agreement further specified that MEMC did not assume any liability resulting
or arising from the operation of the plant prior to the closing date.

          Albemarle made certain representations
and warranties to MEMC.  Under Section
4.16, labeled “Contracts and Commitments,” Albemarle represented that, except
as set forth in Schedule 4.16, it was “not a party to” and the transferred
assets “are not bound by” and the Assumed Obligations “shall not include, any
written or oral, formal or informal . . . agreements between or among Seller
and any Affiliate of Seller . . . .” 
Schedule 4.16 did not mention the indemnity agreement between Ethyl and
Albemarle.   

          The Asset Purchase Agreement between
Albemarle and MEMC included an indemnity provision.  Generally speaking, depending on whether the
damages arose out of the operation of the plant “prior to the closing date” or
“on or after the closing date,” MEMC would indemnify Albemarle for the damages,
or Albemarle would indemnify MEMC for the damages.  In Section 7.3, Albemarle agreed to indemnify
MEMC from and against all damages incurred by MEMC directly or indirectly by
reason of or resulting from liabilities, obligations or claims, with respect to
the plant arising out of operations of the plant prior to the Closing
Date.  Similarly, Section 7.4 provided
that MEMC would indemnify Albemarle from and against all damages asserted
against, resulting to, imposed upon or incurred by Albemarle, directly or indirectly
by reason of or resulting from liabilities, obligations or claims with respect
to the plant arising out of the operations of the plant on or after the
Closing Date.

          In 1996, three Albemarle employees
were injured when a fire broke out at the plant.  The employees, collectively referred to as
the Damewood plaintiffs, filed a lawsuit against a number of parties,
including Ethyl and MEMC.   Albemarle,
which carried worker’s compensation coverage, was not subject to suit.  MEMC settled with the Damewood
plaintiffs.  Of the parties relevant to
the present case, only Ethyl went to trial in the underlying litigation.  Pursuant to the agreement between Ethyl and
Albemarle, Albemarle defended Ethyl in the Damewood litigation.  At the close of the trial, Ethyl was the only
remaining defendant, and a jury rendered a verdict in excess of six-and-a-half
million dollars against Ethyl.  Ethyl
appealed, and while the appeal was pending, it settled with the Damewood
plaintiffs for approximately five million dollars.  Ethyl sought indemnification from Albemarle
under the terms of their agreement. 
Albemarle indemnified Ethyl for its losses, which is the amount that
Albemarle now seeks from MEMC in this lawsuit. 

          MEMC filed for summary judgment, which
was denied.  Albemarle then filed a
motion for partial summary judgment on the issue of whether MEMC was obligated
to indemnify Albemarle, and MEMC re-urged its motion as a cross-motion for
partial summary judgment.  The trial
court ruled in Albemarle’s favor.  The
trial court severed the summary judgment order, which was the subject of the
prior appeal.  

          In the prior appeal, this Court held
that Albemarle’s contractual obligation to indemnify Ethyl was an undisclosed
contractual obligation in existence prior to the closing date and not identified
in the Asset Purchase Agreement and, therefore, MEMC was not required to
indemnify Albemarle for its payment to Ethyl.  This Court reversed the trial court, rendering
judgment that Albemarle take nothing in its suit against MEMC.  MEMC
Elec. Materials, Inc. v. Albemarle Corp., 241 S.W.3d 67, 76 (Tex.
App.—Houston [1st Dist.] 2007, pet. denied).

          In the instant suit, MEMC seeks
attorney’s fees and expenses from Albemarle for Albemarle’s prosecution of an
Excluded Obligation.  MEMC and Albemarle
filed cross-motions for summary judgment on the issue.  The trial court denied MEMC’s motion for
summary judgment and granted Albemarle’s motion.  Due to confusion regarding the submission
date for the motions, the trial court vacated its order and reconsidered the
motions for summary judgment.  The trial
court reached the same decision, again denying MEMC’s motion and granting
Albemarle’s motion.

Issues Presented in
this Appeal

          In two issues, MEMC contends the trial
court erred by granting Albemarle’s motion for summary judgment and by denying
MEMC’s motion.  As an initial matter,
however, Albemarle contends that MEMC did not raise certain issues in its
motion for summary judgment to the trial court and may not, therefore, raise
them on appeal.  See Tex. R. Civ.
P. 166a(c) (“Issues not
expressly presented to the trial court by written motion, answer or other
response shall not be considered on appeal as grounds for reversal.”); McConnell v. Southside Indep. Sch. Dist.,
858 S.W.2d 337, 341 (Tex. 1993) (summary judgment motion “must stand or fall on
the grounds expressly presented in the motion”).  MEMC counters that the issues were raised
before the trial court, either in its motion for summary judgment or in its
motion for reconsideration.  A ground for
summary judgment included in a motion for reconsideration may be considered on
appeal when the trial court granted the motion for reconsideration.  John R.
Ray & Sons, Inc. v. Stroman, 923 S.W.2d 80, 88 n.4 (Tex. App.—Houston
[14th Dist.] 1996, writ denied).  Here,
the trial court granted MEMC’s motion for reconsideration, specifically noting
that, due to confusion concerning the submission date, it had ruled without
receiving complete briefing from the parties. 
Therefore, to the extent the grounds MEMC discusses on appeal were
raised in its motion for summary judgment or its motion for reconsideration, we
will consider these on appeal.  See id.

Albemarle’s Suit on the
Ethyl Contract

          MEMC contends the trial court erred by
refusing to find Albemarle liable for fees and costs that MEMC incurred in
defending against “Albemarle’s invalid claim to enforce the Ethyl
contract.”  Within its two issues, MEMC asserts
the trial court erred by denying its motion for summary judgment and granting a
take-nothing summary judgment in favor of Albemarle.  MEMC asserts that the trial court erred because
this Court held Albemarle’s claim for its indemnification under the Ethyl
contract was a pre-Closing Date obligation and an Excluded Obligation, and “[t]his
Court also found that Albemarle had breached its contractual warranties by
suing on the undisclosed Ethyl Contract, which had not been assumed by MEMC.”  Concerning an award of attorney’s fees, MEMC
also contends the trial court erroneously stated that fees for a breach of
contract were discretionary. 

          A.      Applicable Law

          We review summary judgments de
novo.  Valence Operating Co. v.
Dorsett, 164 S.W.3d 656, 661 (Tex. 2005). 
Traditional summary judgment is proper only when the movant establishes
that there is no genuine issue of material fact and that the movant is entitled
to judgment as a matter of law.   Tex. R. Civ. P. 166a(c).  The motion must state the specific grounds
relied upon for summary judgment.  Id.  In reviewing a traditional summary
judgment, we must indulge every reasonable inference in favor of the nonmovant,
take all evidence favorable to the nonmovant as true, and resolve any doubts in
favor of the nonmovant.  Valence,
164 S.W.3d at 661.  When reviewing cross-motions for summary judgment, we
consider both motions and render the judgment that the trial court should have
rendered.  Coastal Liquids Transp.,
L.P. v. Harris County Appraisal Dist., 46 S.W.3d 880, 884 (Tex. 2001).   

          In construing a
written contract, our primary concern is to ascertain the true intentions of
the parties as expressed in the instrument. 
J.M. Davidson,
Inc. v. Webster, 128
S.W.3d 223, 229 (Tex. 2003).  We
must consider the entire writing “to harmonize and give effect to all the
provisions of the contract so that none will be rendered meaningless.”  Id.  All the provisions of the contract must be
considered with reference to the whole instrument and no single provision,
taken alone, can be given controlling effect. 
Id.  

          B.      Terms of the Asset Purchase Agreement

          Section 7.3 of the Asset Purchase
Agreement states,

[Albemarle’s] Agreement to Indemnify.  Subject to
the terms and conditions of this Article 7, [Albemarle] agrees to indemnify,
defend and hold harmless MEMC and MEMC Pasadena from and against all Damages,
asserted against, resulting to, imposed upon or incurred by MEMC or MEMC
Pasadena, directly or indirectly (collectively, “MEMC/MEMC Pasadena Claims”), by reason of or resulting from:

 

(a)     liabilities,
obligations or claims, with respect to the Transferred Business or the
Transferred Assets (whether absolute, accrued, contingent or otherwise) arising
out of operations of the Transferred Business or the Transferred Assets prior
to the Closing Date;

 

(b)     liabilities
with respect to Excluded Obligations;

 

(c)      a breach
of any representation, warranty or agreement of [Albemarle] contained in or
made pursuant to this Agreement;

 

. . . 

 

(h)     any and
all reasonable costs and expenses (including reasonable attorneys’,
accountants’ and other professional fees and expenses) incurred by MEMC or MEMC
Pasadena in connection with any Action, demand, claims, assessment or judgment
incident to any of the matters indemnified against under (a) through (g) above.

 

          In addition to Section 7.3, the Asset
Purchase Agreement contains Section 3.4(b) defining Excluded Obligations and Section
3.4(a) defining Assumed Obligations.  Section
3.4(b) states, “Nothing herein, however, shall be deemed to prohibit [Albemarle]
from contesting in good faith whether the claim, demand or Liability is an
Excluded Obligation, Assumed Obligation, or otherwise.”  Section 3.4(a) provides, “MEMC Pasadena shall
assume and agree and undertake in writing to pay, perform and discharge as and
when due (although nothing herein shall be deemed to prohibit MEMC Pasadena
from contesting in good faith any such item) the following Liabilities of [Albemarle]
(collectively, “Assumed Obligations”):
. . . .”  

          Section 3.4, which allows the parties
to contest in good faith whether an obligation is an Excluded Obligation or an
Assumed Obligation, does not provide for attorney’s fees or costs for the
prevailing party in the event of a lawsuit. 
Similarly, the Asset Purchase Agreement does not contain a section
providing for attorney’s fees or costs in the event of a suit concerning the
scope of the agreement or in the event of a breach of the agreement.  The only section providing for attorney’s
fees and costs is Section 7.3(h) within the indemnification provision.

          C.      Analysis of the Indemnification Agreement

          MEMC contends that the trial court
erred by rendering summary judgment for Albemarle because subsections (a), (b),
and (c) of Section 7.3 of the Asset Purchase Agreement require Albemarle to
indemnify MEMC.  MEMC contends that it is
entitled to attorney’s fees for defending this suit under 7.3(h) of the Asset
Purchase Agreement, which provides for “any and all reasonable costs and
expenses (including reasonable attorneys’, accountants’ and other professional
fees and expenses)” in connection with defending a claim under subsections (a),
(b), and (c) of Section 7.3.

                   1.       Section 7.3(a)—Pre-Closing
Date Obligation

          MEMC contends that Section 7.3(a)
applies and requires Albemarle to indemnify MEMC for Albemarle’s bringing suit
for indemnification of its payment under the Ethyl contract.  Specifically, Section 7.3(a) applies to
“liabilities, obligations or claims, with respect to the Transferred Business
or the Transferred Assets . . . arising out of operations of the Transferred
Business or the Transferred Assets prior to the Closing Date.”  MEMC contends that this Court “found that the
Ethyl Contract was a pre-Closing Date obligation” and, therefore, Albemarle
must indemnify MEMC for bringing this suit for a pre-Closing Date obligation.”

          MEMC misstates the applicable portion
of this Court’s opinion in the prior appeal. 
In the prior appeal, this Court specifically stated, “We conclude that the payment made to indemnify Ethyl was not a liability, obligation or claim arising
out of the operations of the plant, but rather a payment that arose out of
the prior contractual relationship between Albemarle and Ethyl.”  MEMC Elec. Materials, Inc., 241 S.W.3d at 76 (emphasis added).  Section 7.3(a) applies to claims “arising out
of operations of the Transferred Business or the Transferred Assets.”  Because this Court concluded the Ethyl
contract did not arise out of operations of the plant, Section 7.3(a) does not
apply.  The trial court properly rendered
summary judgment in favor of Albemarle on this ground.  We overrule this portion of MEMC’s issues.

                   2.       Section 7.3(b)—Excluded Obligation

          MEMC
also contends that Section 7.3(b) applies and requires Albemarle to indemnify
MEMC for Albemarle’s bringing suit for indemnification of its payment under the
Ethyl contract.  Section 7.3(b) requires
Albemarle to indemnify MEMC for “liabilities with respect to Excluded Obligations.”  In the opinion in the prior appeal, this
Court did state that the Ethyl contract is an Excluded Obligation.  Therefore, read in isolation, Section 7.3(b)
appears to support MEMC’s contention. 

          However, as stated above, we cannot
read a provision of a contract in isolation; we must consider the whole
instrument to harmonize the provisions and ascertain the parties’ intent.  See J.M. Davidson, Inc., 128 S.W.3d
at 229.  Here Section 3.4 of the contract
specifically allows either party to contest, “in good faith,” whether a
particular obligation is an Excluded Obligation or an Assumed Obligation.  Albemarle expressly raised this contract
provision in the summary judgment proceedings before the trial court.  MEMC did not respond or otherwise address the
good faith contest provisions of Section 3.4. 
In its order granting Albemarle’s motion, the trial court stated that
both MEMC and Albemarle had a “good faith basis” for their claims.    

          On appeal, MEMC contends, without
citation to any relevant authority, that the Asset Purchase Agreement “afforded
no excuse for Albemarle’s ‘good faith’ lawsuit,” and that “[t]o read such a
‘good faith dispute’ clause into the Asset Purchase Agreement effectively
renders [the indemnity] clause meaningless.” 
First, we note that the Asset Purchase Agreement expressly provides for
a good faith contest of whether an obligation is an Assumed Obligation or
Excluded Obligation; neither the trial court nor this Court are “reading” it
into the contract.  Furthermore, MEMC’s
arguments concerning the “good faith” provisions of the Asset Purchase
Agreement are raised for the first time in its brief in this appeal.  Because MEMC did not assert these arguments
in its motion for summary judgment or its response to Albemarle’s motion for
summary judgment, it cannot serve as a basis to reverse the trial court’s
judgment.  See Tex. R. Civ.
P. 166a(c); McConnell, 858 S.W.2d at 341.  We overrule this portion of MEMC’s issues. 

                   3.       Section 7.3(c)—Breach of
Representation or Warranty

          MEMC contends that Section 7.3(c)
applies and requires Albemarle to indemnify MEMC for Albemarle’s bringing suit
for indemnification of its payment under the Ethyl contract.  Specifically, MEMC contends that the trial
court “ignored the First Court’s findings that Albemarle breached its
representations and warranties.”  MEMC
similarly states that “this Court concluded that Albemarle had breached its
contractual representations and warranties by failing to disclose the Ethyl
Contract.”  However, this Court did not
hold that Albemarle breached any warranties under the Asset Purchase
Agreement.  In construing the entire
Asset Purchase Agreement, this Court looked to Section 4.16 concerning
Albemarle’s representations and warranties concerning existing contracts.  We noted that the Assumed Obligations did not
include any undisclosed contract.  In
concluding the discussion concerning Section 4.16, this Court stated,

We also conclude that Albemarle failed to disclose in
Section 4.16 the indemnity agreement it had with its affiliate, Ethyl. Albemarle’s failure to disclose its indemnity agreement with Ethyl
suggests that MEMC was not aware of that agreement and did not obligate itself
to cover any liability imposed under that agreement.  We conclude that terms of Section 4.16
support MEMC’s position that it is not obligated for the indemnity agreement
between Albemarle and Ethyl.

 

241 S.W.3d
at 73.  Contrary to MEMC’s assertion in
this appeal, this Court did not hold Albemarle had breached a warranty, but
concluded that Section 4.16 supported the conclusion that the Ethyl contract
was not an Assumed Obligation.  We did
not address in our prior opinion whether the failure to disclose that the Ethyl
contract was an existing obligation violated the agreement between MEMC and
Albemarle.  Because this is the only
ground asserted on the breach of warranty issue, the trial court did not err by
rendering summary judgment for Albemarle on this ground.  We overrule this portion of MEMC’s issues.

          Having concluded the trial court
properly rendered summary judgment on Section 7.3, subsections (a), (b), and
(c), MEMC was not entitled to attorney’s fee under Section 7.3(h).  We hold the Asset Purchase Agreement does not
provide for indemnification of “good faith” claims between MEMC and Albemarle
concerning the scope and meaning of the agreement.  See MG
Bldg. Materials, Ltd. v. Moses Lopez Custom Homes, Inc., 179 S.W.3d 51, 63
(Tex. App.—San Antonio 2005, pet. denied) (stating indemnity agreements
generally relate to claims brought by third-parties and “do[] not apply to
claims between the parties to the agreement”).




 

          D.      Breach of Contract 

          As noted in the discussion of Section
7.3(c) above, MEMC contends that the trial court erred by rendering summary
judgment in favor of Albemarle when it “ignored the First Court’s findings that
Albemarle breached its representations and warranties.”  As discussed above, MEMC misstates the
opinion in the prior appeal.  Therefore,
the trial court did not err by rendering summary judgment for Albemarle on this
ground.

          MEMC also contends that trial court
erred because it stated the award of attorney’s fees for breach of contract under
section 38.001 of the Civil Practice and Remedies Code is discretionary.  See
Tex. Civ. Prac. & Rem. Code
Ann. § 38.001(8) (Vernon 2008). 
Section 38.001 provides for attorney’s fees for a prevailing party in a
breach of contract case.  See id.; see also Hassell Constr. Co.
v. Stature Commercial Co., 162 S.W.3d 664, 668 (Tex. App.—Houston [14th
Dist.] 2005, no pet.)  (holding award of attorney’s
fees to party prevailing on contract claim is mandatory under section 38.001 if
there is proof of the reasonableness of the fees).  Because we conclude the trial court properly
denied MEMC’s motion for summary judgment on its breach of contract claim, MEMC
was not entitled to attorney’s fees.  See Stevens v. Anatolian Shepherd Dog Club
of Am., Inc., 231 S.W.3d 71, 77 (Tex. App.—Houston [14th Dist.] 2007, pet.
denied) (stating to obtain attorney’s fees party must both prevail and recover
damages).  Therefore, the error, if any,
in the trial court’s treating attorney’s fees under section 38.001 as
discretionary is harmless.

Damewood Litigation

          In the second portion of its appellate
brief, MEMC contends the trial court erred in refusing to award MEMC the fees
and costs incurred in defending against the Damewood
litigation as well.  Specifically, MEMC
contends it is entitled to indemnity for the Damewood litigation because Section 3.4(b)(vii) of the Asset
Purchase Agreement provides that “any Liabilities of Seller relating to Employees”
are Excluded Obligations.  We have
reviewed both MEMC’s motion for summary judgment and its motion for reconsideration
and this ground is not mentioned in either motion.  Therefore, it may not serve as a basis to
reverse the trial court’s judgment.  See Tex.
R. Civ. P. 166a(c); McConnell, 858 S.W.2d at 341.


Conclusion

          We overrule MEMC’s two
issues.  We affirm the judgment of the
trial court.

 

 

                                                                   Elsa
Alcala

                                                                   Justice


 

Panel
consists of Chief Justice Radack and Justices Alcala and Higley.











[1]           In Larry Damewood, Gary Woodard, and Roy Moss v. Ethyl Corporation, Cause No. 96-38521, in the 189th District
Court of Harris County, Texas, three injured Albemarle employees sued Ethyl,
Albemarle’s parent corporation and MEMC, among others, for injuries sustained
in a fire at Albemarle’s plant.