**GALLAGHER HEALTHCARE
INSURANCE SERVICES,**
Appellant,

v.

**Page M. VOGELSANG, Appellee.**

**No. 01–07–00478–CV.**

Court of Appeals of Texas,
Houston (1st Dist.).

Aug. 21, 2009.

Rehearing Overruled Feb. 4, 2010.

David L. Countiss, Walter J. Cicack, Seyfarth Shaw LLP, Richard N. Countiss, Countiss Law Firm, Houston, TX, for Appellant.

Alejandro Gonzalez, Melanie Gray, Scarlett Elizabeth Collings, Weil, Gotshal & Manges, LLP, Charles Alfred Sturm, Howard L. Steele, Jr., Steele Sturm, LLP, Kimberly Goodling, Doyle Raizner LLP, Murry B. Cohen, Akin Gump Strauss Hauer & Feld L.L.P., Houston, TX, for Appellee.

## OPINION

EVELYN V. KEYES, Justice.

In this breach of contract suit, appellant, Gallagher Healthcare Insurance Services ("GHIS"), challenges the trial court's summary judgment order that denied its motion for summary judgment and granted summary judgment in favor of appellee, Page M. Vogelsang. In one issue on appeal, GHIS contends that the trial court erred in holding that the covenant-not-to-

compete provision in Vogelsang's employment agreement was unenforceable.

We reverse and remand.

### Background

Vogelsang started working for the Galtney Group, Inc. in 1994 as an insurance broker. In 2001, GHIS purchased Galtney and acquired the services of Vogelsang as a "Producer." GHIS, a second tier subsidiary of Arthur J. Gallagher & Co., provides insurance and reinsurance services. As a Producer for GHIS, Vogelsang "had a large responsibility to renew existing business and secure new business."

As part of the purchase of Galtney, GHIS required Vogelsang to enter into an employment agreement with GHIS. In relevant part, the agreement provided:

Section 7. *Trade Secrets and Confidential Information.*

(a) The Executive acknowledges that the Corporation's business depend[s] to a significant degree upon the possession of information which is not generally known to others, and that the profitability of the Corporation's business requires that this information remain proprietary to the Corporation. The Executive agrees that all intellectual property, such as computer programs, systems or software, developed during his employment or as a result of his employment is work for hire performed by the Executive in the scope of his employment. The Corporation shall retain all proprietary rights to any and all such intellectual property. Executive agrees to execute any documents necessary to perfect Corporation's interest in such intellectual property upon Corporation's request.

(b) **The Executive recognizes that by virtue of his employment by the Corporation, he will be granted otherwise prohibited access to confidential and proprietary data of AJG and the Corporation which is not known either to its competitors or within the insurance agency and brokerage business generally.** This information (hereinafter referred to as "Confidential Information") includes, but is not limited to, data relating to AJG and the Corporation's unique marketing and servicing programs, procedures and techniques; the criteria and formulae used by AJG and the Corporation in pricing its insurance and employee benefits products and claims management, loss control and information management services; the structure and pricing of special insurance packages that AJG and the Corporation has negotiated with various underwriters; lists of prospects compiled by AJG and the Corporation's management and research staff; the identity, authority and responsibilities of key contacts at AJG and the Corporation accounts, including accounts of the Acquired Business; the composition and organization of accounts' businesses; the peculiar risks inherent in their operations, highly sensitive details concerning the structure, conditions and extent of their existing insurance coverages; policy expiration dates; premium amounts; commission rates; risk management service arrangements; loss histories; and other data showing the particularized insurance requirements and preferences of the accounts. The Executive recognizes that this Confidential Information constitutes a valuable property of the Corporation, developed over a long period of

time and at substantial expense. Accordingly, the Executive agrees that he will not, at any time during his employment by the Corporation, divulge such Confidential Information or make use of it for his own purposes or the purposes of another.

(c) The Executive recognizes the highly sensitive nature of the confidential Information to which he will have access during his employment, and acknowledges the Corporation's legitimate interest in safeguarding same from disclosure. **Accordingly, the Executive agrees that, for a period of two (2) years following the termination of his employment for any reason whatsoever, he will not divulge AJG's or the corporations's Confidential Information or make use of it for his own purpose or the purpose of another.**

*Section 8. Protection of Corporation's Business*

(a) The Executive recognizes the Corporation's legitimate interest in protecting, for a reasonable period of time following the termination of the Executive's employment, those Corporation accounts with which the Executive will be associated during his employment. **Accordingly, the Executive understands and agrees that for a period of two (2) years following the termination of his employment for any reason whatsoever, he will not, directly or indirectly, solicit, place, market, accept, aid, counsel or consult in the renewal, discontinuance or replacement of any insurance (including self-insurance) by, or handle self-insurance programs, insurance claims, risk management services or other insurance administrative or service functions for, any AJG or Corpo-**

**ration account for which he performed any of the foregoing functions during the two-year period immediately preceding such termination.** For purposes of Sections 7 and 8 hereof, all references to "Corporation" shall be deemed to include the Acquired Business.

(Emphasis added). Vogelsang resigned from GHIS on February 15, 2006 and began working for Lockton Companies, Inc., a direct competitor of GHIS. On the same day that Vogelsang resigned, her entire service team also moved to Lockton.

GHIS sued Vogelsang, Michelle Friede, Patti Philippone, Trisha Birdsong, and Lockton Companies, Inc. for breach of contract and injunctive relief, among other causes of action. In its petition in the trial court, GHIS stated that it "fosters and develops goodwill with its clients by making a team of insurance professionals available to them. The Producer is vital to GHIS' ability to maintain goodwill with clients and in most cases the Producer is the person who interfaces with the client and builds a strong personal relationship." GHIS further pled that "[a] fundamental and important part of GHIS' business is the development and maintenance of confidential information, including, but not limited to, client lists and contacts, client insurance needs, risk characteristics and budget limits, pricing structures, product and marketing information, and specific information regarding each client's insurance policies, including the expiration dates, terms, and premiums." GHIS alleged that after signing the agreement and throughout her employment, Vogelsang received confidential information consisting of

employment arrangements, salary, compensation and other confidential information, regarding certain personnel in

the Houston office. GHIS also gave Vogelsang confidential and trade secret information concerning [GHIS's] business plans, compensation plans, clients lists, client-related information (e.g. insurance proposals, coverages, limits to purchase, insurance binders, insurance program structures, loss histories, exposures, premiums and premium pricing, renewal dates, products purchased, etc.), client prospects databases, and the clients or "books of business" that were serviced by everyone in the Houston office, but especially the books of business for whom she was the Producer. Both sides moved for summary judgment.

In its motion for summary judgment, GHIS contended that Vogelsang's covenant-not-to-compete was enforceable because GHIS "promised to and provided Vogelsang with confidential information, which Vogelsang agreed not to disclose" and that Vogelsang's agreement not to disclose the confidential information was ancillary to GHIS's promise to provide the confidential information. GHIS also argued that the covenant-not-to-compete was reasonable because it only prohibited Vogelsang "from soliciting clients with whom she had actually worked while at GHIS" for a period of two years after termination.

In her cross-motion for summary judgment, Vogelsang contended that the covenant-not-to-compete was unenforceable because GHIS did not make an express promise to provide confidential information and that even if a promise was made, GHIS did not

> actually perform that promise by providing new consideration in the form of confidential information.... Third the covenant is also overbroad as a matter of law. Finally, [GHIS] has not established an interest worthy of protection,

as required by *Sheshunoff*,[1] because all of the information it claims to be confidential is publicly available.

On February 9, 2007 after a two-day hearing, the trial court held, among other things, that the "non-competition promise" in the Employment Agreement was unenforceable, and therefore, "[GHIS] shall TAKE NOTHING by the claim that Vogelsang has breached the non-competition promise in the Employment." After the trial court's interlocutory order, the trial court granted the parties' joint motion to non-suit all claims and parties except "GHIS's claim against Page M. Vogelsang that she breached the covenant-not-to-compete provision of the GHIS employment agreement." GHIS retained its "rights to (i) to appeal the Court's judgment that the covenant-not-to-compete provision of the employment agreement Page M. Vogelsang signed on or about June 1, 2001 is unenforceable, and that GHIS take nothing by the claim that Vogelsang has breached the non-competition promise in that employment agreement."

### Summary Judgment Standard of Review

Because summary judgment is a question of law, we review a trial court's summary judgment decision de novo. *Bendigo v. City of Houston,* 178 S.W.3d 112, 113 (Tex.App.-Houston [1st Dist.] 2005, no pet.). The standard of review for a traditional summary judgment motion is three-fold: (1) the movant must show that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law; (2) in deciding whether there is a disputed material fact issue precluding summary judgment, the court must take evidence favorable to the nonmovant as true; and (3) the court must indulge every reasonable inference in favor of the non-

1. *See Alex Sheshunoff Mgmt. Servs., L.P. v.* *Johnson,* 209 S.W.3d 644 (Tex.2006).

movant and resolve any doubts in the non-movant's favor. *Nixon v. Mr. Prop. Mgmt. Co.,* 690 S.W.2d 546, 548–49 (Tex. 1985); *see* Tex.R. Civ. P. 166a(c). A defendant seeking summary judgment must as a matter of law negate at least one element of each of the plaintiff's theories of recovery or plead and prove each element of an affirmative defense. *EPGT Texas Pipeline, L.P. v. Harris County Flood Control Dist.,* 176 S.W.3d 330, 335 (Tex.App.-Houston [1st Dist.] 2004, no pet.). We affirm the summary judgment if any of the theories presented to the trial court and preserved for appellate review is meritorious. *Cincinnati Life Ins. Co. v. Cates,* 927 S.W.2d 623, 626 (Tex.1996); *Carr v. Brasher,* 776 S.W.2d 567, 569 (Tex.1989); *Joe v. Two Thirty Nine Joint Venture,* 145 S.W.3d 150, 157 (Tex.2004) (summary judgment which does not specify basis for court's ruling may be affirmed only on "theories presented to the trial court and preserved for appellate review").

When both parties move for summary judgment and the trial court grants one motion and denies the other, the appellate court should review both parties' summary judgment evidence and determine all questions presented. *See FM Props. Operating Co. v. City of Austin,* 22 S.W.3d 868, 872 (Tex.2000). The reviewing court should render the judgment that the trial court should have rendered. *See id.*

■ To be considered by the trial or reviewing court, summary judgment evidence must be presented in a form that would be admissible at trial. *Hidalgo v. Surety Sav. & Loan Ass'n,* 462 S.W.2d 540, 545 (Tex.1971); *Friday v. Grant Plaza Huntsville Associates,* 713 S.W.2d 755, 756 (Tex.App.-Houston [1st Dist.] 1986, no writ). A party must object in writing to the form of summary judgment evidence

and place the objections before the trial court, or its objections will be waived. *Grand Prairie Indep. Sch. Dist. v. Vaughan,* 792 S.W.2d 944, 945 (Tex.1990). Failure to secure the trial court's ruling on the objections to the summary judgment evidence also waives the complaint for appeal. *See Roberts v. Friendswood Dev. Co.,* 886 S.W.2d 363, 365 (Tex.App.-Houston [1st Dist.] 1994, writ denied).

### Covenant Not To Compete

In its sole issue, GHIS argues that the trial court erred in holding that the covenant not to compete was unenforceable.

■ Whether a covenant not to compete is enforceable is a question of law for the court. *Light v. Centel Cellular Co.,* 883 S.W.2d 642, 644 (Tex.1994); *TMC Worldwide, L.P. v. Gray,* 178 S.W.3d 29, 36 (Tex.App.-Houston [1st Dist.] 2005, no pet.). A covenant not to compete is enforceable if it is (1) "ancillary to or part of an otherwise enforceable agreement at the time the agreement is made" and (2) reasonable, not imposing a greater restraint than is necessary to protect the goodwill or other business interest of the employer. Tex. Bus. & Com.Code Ann. § 15.50(a) (Vernon 2002).

### 1. Enforceability of Covenant Not to Compete Containing Implied Promise to Provide Confidential Information

GHIS argues that the covenant not to compete is enforceable because it impliedly promised to provide confidential information to Vogelsang and the implied promise was ancillary to an otherwise enforceable covenant not to compete and did not make it unenforceable. GHIS argues that other courts, including this Court, have held that a party can impliedly promise to provide confidential information.[2]

---

**2.** *See Hardy v. Mann Frankfort Stein & Lipp* *Advisors, Inc.,* 263 S.W.3d 232 (Tex.App.-

Vogelsang responds that the agreement is not enforceable because GHIS did not promise to provide confidential information in exchange for Vogelsang's agreement not to compete. She points out that section seven of the agreement provided, "[Vogelsang] recognizes that by virtue of [her] employment by [GHIS], [Vogelsang] will be granted otherwise prohibited access to confidential and proprietary data of AJG and [GHIS]." Vogelsang contends that this statement "merely describes Vogelsang's recognition that she will not divulge any future confidential information she *might receive* (because she has merely been promised 'access' to it); it is by no means *a promise to give* her anything."

■■■ For a covenant not to compete to be ancillary to or part of an otherwise enforceable agreement, the employer must establish both "(1) that the consideration given by the employer in the otherwise enforceable agreement must give rise to the employer's interest in restraining the employee from competing; and (2) that the covenant must be designed to enforce the employee's consideration or return promise in the otherwise enforceable agreement." *Alex Sheshunoff Mgmt. Servs., L.P. v. Johnson,* 209 S.W.3d 644, 649 (Tex. 2006) (quoting *Light,* 883 S.W.2d at 647). "[B]usiness goodwill and confidential or proprietary information" are examples of interests that are worthy of protection by a covenant not to compete. *Id.* However, for a covenant not to compete to be enforceable, the agreement must be designed to enforce the return promises made by the employee. *Id.* An implied promise is as binding on the parties as a promise expressly stated in the documents. *Hall v. Hall,* 158 Tex. 95, 308 S.W.2d 12, 15 (Tex.1957); *Adams v. Big Three Indus.,*

*Inc.,* 549 S.W.2d 411, 415 (Tex.Civ.App.-Beaumont 1977, writ ref'd n.r.e.); *NHA, Inc. v. Jones,* 500 S.W.2d 940, 945 (Tex. Civ.App.-Fort Worth 1973, writ ref'd n.r.e.).

In arguing that the covenant not to compete is unenforceable because GHIS made no binding promise to provide confidential information that could give rise to its interest in restraining Vogelsang from competing, Vogelsang relies primarily upon *Light.* In *Light,* the Texas Supreme Court explained why the covenant not to compete between Light and United was not ancillary to or part of an otherwise enforceable agreement as follows:

> While United's consideration (the promise to train) might involve confidential or proprietary information, the covenant not to compete is not designed to enforce any of Light's return promises in the otherwise enforceable agreement. Light did not promise in the otherwise enforceable agreement to not disclose any of the confidential or proprietary information given to her by United. Thus, the covenant not to compete agreement between Light and United is unenforceable because it is not ancillary to or a part of the otherwise enforceable agreement between them.

*Light,* 883 S.W.2d at 647 (emphasis added).

Vogelsang also relies on *Strickland v. Medtronic, Inc.* to show that GHIS made no promise to her. *See* 97 S.W.3d 835, 839 (Tex.App.-Dallas 2003, pet. dism'd w.o.j.). Following *Light,* the *Strickland* court held that the relevant inquiry regarding the enforceability of a covenant not to compete "is whether *at the time the agreement is made,* there exists a binding promise" to provide the confidential infor-

Houston [1st Dist.] 2007), *rev'd, Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding,* 289 S.W.3d 844 (Tex.2009); *Beasley v. Hub*

*City Texas, LP,* 01–03–00287–CV, 2003 WL 22254692 (Tex.App.-Houston [1st Dist.] Sept. 29, 2003, no pet.) (mem. op.).

mation. *Id.* (emphasis in original). *Strickland* involved an interlocutory appeal from an order granting Medtronic a temporary injunction enforcing a non-compete covenant against its former at-will employee, Strickland. *Id.* The court noted "several non-illusory promises that were capable of serving as consideration for the agreement despite Strickland's at-will status, namely: (1) Medtronic's promise to provide ninety days['] notice of termination if Strickland was terminated without cause; ... (3) Strickland's promise not to use or disclose confidential information; [and] (4) Strickland's promise to return documents and tangible items upon termination." *Id.* at 838–39. Medtronic argued that the following provision in the employee agreement's "Introduction" was additional consideration by Medtronic: "This agreement is intended to recognize that Medtronic provides the Employee with information concerning its business, products and customers and entrusts the Employee with business relationships and good will of great value to Medtronic." *Id.* at 839. The court held this provision did not obligate Medtronic to provide Strickland with confidential information and therefore did not constitute an implied promise. *Id.* The court further stated,

> Even assuming that by this [last] provision Medtronic impliedly promised to provide confidential information to Strickland, we conclude [that] such a promise is illusory because it necessarily depends on a period of employment. Medtronic could avoid this obligation by simply firing Strickland on the day [that] the employment agreement was executed.

*Id.* The same analysis applied to the providing of training by Medtronic and was deemed by the court also to be illusory. *Id.*

More recently, however, the Texas Supreme Court—while noting that it was not disturbing the holding in *Light*—held, contrary to footnote six in *Light,* that a covenant not to compete is not unenforceable merely because the employer's promise is executory when made. *Sheshunoff,* 209 S.W.3d at 649. The *Light* court stated, "If the agreement becomes enforceable after the agreement is made because the employer performs his promise under the agreement and a unilateral contract is formed, the covenant is enforceable if all other requirements under the Act are met." *Id.* at 655. The court further stated,

> We also take this opportunity to observe that section 15.50(a) does not ground the enforceability of a covenant not to compete on the overly technical disputes that our opinion in *Light* seems to have engendered over whether a covenant is ancillary to an otherwise enforceable agreement. Rather, the statute's core inquiry is whether the covenant "contains limitations as to time, geographical area, and scope of activity to be restrained that are reasonable and do not impose a greater restraint than is necessary to protect the goodwill or other business interest of the promisee." Concerns that have driven disputes over whether a covenant is ancillary to an otherwise enforceable agreement—such as the amount of information an employee has received, its importance, its true degree of confidentiality, and the time period over which it is received—are better addressed in determining whether and to what extent a restraint on competition is justified. We did not intend in *Light* to divert attention from the central focus of section 15.50(a). To the extent our opinion caused such a diversion, we correct it today.

*Id.* at 655–56 (citations omitted).

The year that *Sheshunoff* was decided, we recognized in *Hardy v. Mann Frank-*

fort Stein & Lipp Advisors, Inc. that an employer could impliedly promise to disclose confidential information to an employee. 263 S.W.3d 232, 247 (Tex.App.-Houston [1st Dist.] 2007), rev'd, Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding, 289 S.W.3d 844 (Tex.2009). However, because in that case the employee neither "acknowledge[d] that he had received or would receive confidential information, nor did the agreement contain representations that [the employee] was receiving consideration for agreeing to the non-disclosure and client-purchase provisions," we held that the employment agreement was not enforceable. Id.

After GHIS's appeal was under submission, the Texas Supreme Court reversed our decision in Hardy. The court stated,

> We hold that if the nature of the employment for which the employee is hired will reasonably require the employer to provide confidential information to the employee for the employee to accomplish the contemplated job duties, then the employer impliedly promises to provide confidential information and the covenant is enforceable so long as the other requirements of the Covenant Not to Compete Act are satisfied.

Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding, 289 S.W.3d 844, 846 (Tex. 2009). It explained, "When the nature of the work the employee is hired to perform requires confidential information to be provided for the work to be performed by the employee, the employer impliedly promises confidential information will be provided." Id. at 850. The court further explained that "if one party makes an express promise that cannot reasonably be performed absent some type of perform-ance by the other party, courts may imply a return promise so the dealings of the parties can be construed to mean something rather than nothing at all." Id. at 851. Thus, "when it is clear that performance expressly promised by one party is such that it cannot be accomplished until a second party has first performed, the law will deem the second party to have impliedly promised to perform the necessary action." Id.

In reaching its decision to uphold the confidentiality agreement, the court observed that the circumstances surrounding Fielding's employment necessarily involved the provision of confidential information to him by Mann Frankfort before he could perform the work he was hired to do as an accountant. Id. at 850–51. The court observed that Mann Frankfort gave Fielding access to "its client database, which contains clients' names, billing information, and pertinent tax and financial information. This was confidential information which Mann Frankfort was interested in keeping confidential." Id. (citing DeSantis v. Wackenhut Corp., 793 S.W.2d 670, 684 (Tex.1990)). The court also observed that "Fielding could not have acted on his promise to refrain from disclosing confidential information unless Mann Frankfort provided him with it." Id.

■ Here, Vogelsang's employment agreement states that she will be granted access to confidential information, that she will not disclose the confidential information for two years after termination, and that she will not compete with GHIS for two years after she is no longer with the firm.[3] In light of the supreme court's Mann Frankfort opinion, we conclude that GHIS impliedly promised to give Vogel-

[3] Vogelsang agreed that "for a period of two (2) years following the termination of h[er] employment for any reason whatsoever, [s]he will not divulge AJG's or the Corporation's Confidential Information or make use of it for h[er] own purpose or the purpose of another."

sang confidential information. *See Mann Frankfort*, 289 S.W.3d at 851–52. Thus, because we hold that GHIS impliedly promised to give Vogelsang confidential information, and Vogelsang agreed not to disclose the confidential information, we next determine whether GHIS actually provided confidential information so that the covenant not to compete became a binding return promise given in exchange for GHIS's implied promise to provide confidential information to her. *See id.* at 850–51.

### 2. *Provision of Confidential Information*

GHIS contends that Vogelsang received confidential information after she signed the agreement, and therefore the covenant not to compete is enforceable. Specifically, GHIS states that Vogelsang received the following types of confidential information between 2003 and 2006: financial information, salary information about certain employees, client specific insurance information, team related income and budgets, account retention strategies, at-risk accounts, strategic prospecting and selling, niche strategies, 2004 financial results, 2005 quarterly financial results, new and lost business summaries, professional standards audit results and related analysis, multiple types of prospect lists, premium volume comparisons, employee salary information, budget reviews, production reviews; internal committee lists, and the 2006 compensation plan.

Attached to GHIS's summary judgment motion was an affidavit from Phillip E. Reischman, the President of GHIS, who averred that the financial information was confidential. Reischman stated,

5. As part of rendering services as an insurance broker, GHIS collects and develops detailed information regarding existing or prospective clients, gathering information as to their risk characteristics, loss histories and terms of existing insurance policies. GHIS uses a store of such information regarding contacts and pricing information as to prospective insurance markets, gathered over years of business operations, to determine appropriate placements of insurance for clients. GHIS has spent substantial time and resources over the years in developing and acquiring this information."

6. Similarly, GHIS has spent considerable time and resources developing other stores of proprietary information, including: (i) unique, confidential business practices, models and data; (ii) client lists and prospects; (iii) lists of key individuals within client and potential client organizations; (iv) the particular insurance requirements of clients and potential clients; (v) contact persons with various insurance markets; (vi) information regarding the assignments and division of responsibilities and compensation of GHIS employees on various accounts; (vii) product pricing; (viii) methods and techniques of operation and training; (ix) marketing strategies; and (x) confidential contract arrangements and personnel files on all of its employees.

7. GHIS has incurred substantial expense and other burdens in developing this confidential and proprietary information. [GHIS's] proprietary information is kept confidential, and GHIS shares such information only with employees and agents of the company on a "need to know" basis, and otherwise takes reasonable precautions to prevent disclosure of this information to third persons. As a result, GHIS' compilation and organization of this information is not

available to and is not readily ascertainable by its competitors and has given GHIS a valuable competitive advantage in the insurance brokerage industry.

. . .

15. Throughout her employment with GHIS, and especially in her positions as team leader and producer, Vogelsang was given access to volumes of confidential information about GHIS and its clients, prospective clients, employees, and overall business. For example, Vogelsang was given access to detailed information regarding the employment arrangements, salary, compensation and other confidential information, regarding personnel in the Houston office. Vogelsang was also given access to [GHIS's] business plans, financial information, client lists, client-related information (e.g. insurance proposals, coverages, limits to purchase insurance binders, insurance program structures, loss histories, exposures, premiums and premium pricing, renewal dates, products purchased, etc.), client prospects database, product and marketing information, and the clients or "books of business" that were serviced by the Houston office and especially the books of business serviced by her team. Vogelsang had a lead role in [GHIS's] convention planning and strategies. It is fair to say that since June of 2001, GHIS has provided to Vogelsang, in her position as manager, senior vice president, and producer, literally thousands of pieces of information that were confidential to GHIS.

16. Exhibits A–4(a) through A–4(u) are representative examples of confidential information that GHIS actually imparted to Vogelsang from 2003 to 2006: client specific insurance information, including limits, renewal dates, and premiums, commissions and fee revenues (all offices); team related income and budgets; account retention strategies; at-risk accounts; strategic prospecting and selling; niche strategies; 2004 financial results (all offices); 2005 quarterly financial results; new and lost business summaries; professional standards audit results and related analysis; multiple types of prospect lists; premium volume comparisons; employee salary information; budget reviews; production reviews; internal committee lists; and the 2006 compensation plan. GHIS imparted to Vogelsang much of the same type of confidential information throughout her entire course of employment with GHIS.

Vogelsang responds that GHIS did not "have an interest worthy of protection," that GHIS's internal financials and information about employee salaries do not give rise to a protectable interest in restraining competition, that the "information necessary to compete in the insurance brokerage industry is readily available in the public domain," and that any client information received by GHIS belongs not to GHIS, but to the client.

 Under Texas law, a trade secret may consist of any formula, pattern, device, or compilation of information that is used in one's business and which gives one an opportunity to obtain an advantage over competitors who do not know or use it. *Computer Assocs. Int'l, Inc. v. Altai, Inc.,* 918 S.W.2d 453, 455 (Tex.1996). Protected data includes compilations of information

which have a substantial element of secrecy and provide the employer with an opportunity for advantage over competitors. *Miller Paper Co. v. Roberts Paper Co.*, 901 S.W.2d 593, 601 (Tex.App.-Amarillo 1995, no writ); *Rugen v. Interactive Bus. Sys., Inc.*, 864 S.W.2d 548, 552 (Tex.App.-Dallas 1993, no writ). Items such as customer lists, pricing information, client information, customer preferences, buyer contacts, market strategies, blueprints, and drawings have all been shown to be trade secrets. *American Precision Vibrator Co. v. National Air Vibrator Co.*, 764 S.W.2d 274, 278–79 (Tex.App.-Houston [1st Dist.] 1988, no writ); *Miller Paper Co.*, 901 S.W.2d at 601.

When an effort is made to keep material important to a particular business from competitors, trade secret protection is warranted. *Rugen*, 864 S.W.2d at 552; *Gonzales v. Zamora*, 791 S.W.2d 258, 265 (Tex.App.-Corpus Christi 1990, no writ). Moreover, a covenant not to compete is enforceable not only to protect trade secrets but also to protect proprietary and confidential information. *See Light*, 883 S.W.2d at 647 n. 14. Customer information is a legitimate interest which may be protected in an otherwise enforceable covenant not to compete. *Martin v. Credit Prot. Ass'n, Inc.*, 793 S.W.2d 667, 670 n. 3 (Tex.1990) (citing *DeSantis*, 793 S.W.2d at 681–82).

Reischman's affidavit demonstrates that the information GHIS provided to Vogelsang was protected confidential information.[4] According to its summary judgment evidence, GHIS's confidential in-

formation (1) took years to acquire; (2) is only shared with employees and agents of GHIS on a "need to know basis"; (3) is not "readily ascertainable by its competitors"; and (4) gives GHIS "a valuable competitive advantage in the insurance brokerage industry." *See Light*, 883 S.W.2d at 647; *see also Sheshunoff*, 209 S.W.3d at 649. Moreover, GHIS (1) spent substantial time and resources developing and acquiring the information and (2) takes reasonable precautions to prevent the disclosure of the confidential information.

We conclude that GHIS presented summary judgment evidence to show that its confidential information was an interest worthy of protection. We further conclude that GHIS gave confidential information to Vogelsang so that she could perform her job at GHIS, as it impliedly promised to do, and that the covenant not to compete was therefore "ancillary to or part of an otherwise enforceable agreement at the time the agreement was made." *See* TEX. BUS. & COM.CODE ANN. § 15.50(a)(1).

We further conclude that, under *Mann Frankfort* and *Sheshunoff*, the covenant not to compete Vogelsang executed was made in consideration of GHIS's implied promise to provide confidential information. *See Mann Frankfort*, 289 S.W.3d at 851–52; *Sheshunoff*, 209 S.W.3d at 651; TEX. BUS. & COM.CODE ANN. § 15.50(a). We thus conclude that the covenant not to compete was ancillary to an otherwise enforceable agreement because the consideration given by GHIS (promising to give confidential information) in the otherwise

4. Vogelsang objected to Reischman's affidavit, but the trial court failed to rule on her objections. A party waives its objections when it fails to get a ruling. *See Evelyn Lockett v. HB Zachry Co.*, 285 S.W.3d 63, 75–76 (Tex.App.-Houston [1st Dist.] 2009, no pet.); *Roberts v. Friendswood Dev. Co.*, 886 S.W.2d 363, 365 (Tex.App.-Houston [1st Dist.] 1994, writ denied). Vogelsang contends that although the trial court did not rule on her objections, we should disregard the affidavit because it consists of legal and factual conclusions. Even if Vogelsang's objections were not waived, we conclude that the portions of the affidavit relied on here were proper summary judgment evidence.

enforceable agreement (providing trade secrets in exchange for promise not to disclose) gave rise to GHIS's interest in restraining Vogelsang from competing, and the covenant was designed to enforce Vogelsang's consideration or return promise (the promise not to disclose the trade secrets). *See Mann Frankfort*, 289 S.W.3d at 851–52; *Light*, 883 S.W.2d at 647 & n. 14.[5]

In support of her argument that GHIS did not "have an interest worthy of protection," Vogelsang relies on *DeSantis v. Wackenhut*, 793 S.W.2d 670 (Tex.1990). In *DeSantis*, the employee, DeSantis, served as the Houston area manager for Wackenhut, who specialized in furnishing security guards for business throughout the country. *Id.* at 675. As part of his employment, he agreed not to compete in any way with Wackenhut in a forty-county area in south Texas, and he agreed that Wackenhut's client list was a "valuable, special and unique asset" that belonged to Wackenhut. *Id.* After DeSantis resigned, he invested in a company that marketed security electronics and he formed a security consulting service. *Id.* In determining whether the covenant not to compete was reasonable, the supreme court held that Wackenhut had not demonstrated the existence of confidential information that the non-competition covenant was needed to protect. *Id.* at 684. In reaching that conclusion, the court reasoned,

> Wackenhut failed to show that its customers could not readily be identified by someone outside its employ, that such

knowledge carried some competitive advantage, or that its customers' needs could not be ascertained simply by inquiry addressed to those customers themselves. Also, Wackenhut failed to show that its pricing policies and bidding strategies were uniquely developed, or that information about its prices and bids could not, again, be obtained from the customers themselves.

*Id.* (citations omitted).

Because confidential and proprietary information are interests worthy of protection and because GHIS presented affidavit testimony showing that "GHIS has spent substantial time and resources over the years in developing and acquiring" the confidential information, GHIS "takes reasonable precautions to prevent disclosure of [the] information to third persons," GHIS's "compilation and organization of this information is not available to and is not readily ascertainable by its competitors," and it gives "GHIS a valuable competitive advantage in the insurance brokerage industry," we disagree that *DeSantis* is fatal to GHIS. *See Light*, 883 S.W.2d at 647; *see also Sheshunoff*, 209 S.W.3d at 649.

### 3. Limitations as to Time, Geographical Area, and Scope of Activity to be Restrained

■ GHIS also argues that the covenant not to compete is reasonable. Specifically, GHIS argues that the covenant not to compete has reasonable geographic restrictions. It also argues that Vogelsang

---

5. Vogelsang also argues that GHIS had to have given Vogelsang confidential information after she signed the employment agreement in 2001 and that GHIS had to have given her new consideration, i.e. new confidential information that Vogelsang did not already have from her previous employer, Galtney, in order for the covenant not to compete to be enforceable. Reischman's affidavit states that after Vogelsang signed the agreement GHIS gave confidential information to Vogelsang. The sealed record also contains exhibits of information given to Vogelsang dated after she signed the agreement in 2001. We thus disagree with Vogelsang's contention that she did not receive new confidential information after she signed the agreement.

worked on about 80 accounts in her last two years of employment with GHIS and that the agreement only precludes her from working on these 80 accounts for two years from the date of her resignation. Vogelsang responds that the restrictions are not reasonable.

A covenant not to compete is unenforceable unless it meets the reasonableness standards of section 15.50 of the Texas Business and Commerce Code. *John R. Ray & Sons, Inc. v. Stroman,* 923 S.W.2d 80, 85 (Tex.App.-Houston [14th Dist.] 1996, writ denied). The restriction must be reasonable, not imposing a greater restraint than is necessary to protect the goodwill or other business interest of the employer. TEX. BUS. & COM.CODE ANN. § 15.50(a). To be enforceable, a covenant must "contain[ ] limitations as to time, geographical area, and scope of activity to be restrained that are reasonable and do not impose a greater restraint than is necessary to protect the goodwill or other business interest of the promisee." *Id.* A restraint is unnecessary if it is broader than necessary to protect the legitimate interests of the employer. *DeSantis,* 793 S.W.2d at 682. Whether a covenant is a reasonable restraint on trade is a question of law for the court. *Stroman,* 923 S.W.2d at 85. A restrictive covenant is "overbroad and unreasonable when it extends to clients with whom the employee had no dealings during his employment." *Stroman,* 923 S.W.2d at 85; *see also Peat Marwick Main & Co. v. Haass,* 818 S.W.2d 381, 386–88 (Tex.1991). The Texas Supreme Court has held that an industry-wide exclusion is unreasonable. *Haass,* 818 S.W.2d at 386–88.

Section 8 of the agreement, entitled "Protection of Corporation's Business" provides,

> The Executive recognizes the Corporation's legitimate interest in protecting, for a reasonable period of time following the termination of the Executive's employment, those Corporation accounts with which the Executive will be associated during his employment. Accordingly, the Executive understands and agrees that for a period of two (2) years following the termination of his employment for any reason whatsoever, he will not, directly or indirectly, solicit, place, market, accept, aid, counsel or consult in the renewal, discontinuance or replacement of any insurance (including self-insurance) by, or handle self-insurance programs, insurance claims, risk management services or other insurance administrative or service functions for, any AJG or Corporation account for which he performed any of the foregoing functions during the two-year period immediately preceding such termination.

The agreement thus precludes Vogelsang from working with clients with whom she had worked in the past two years and precludes her from any activity with these clients for two years after termination. Although it is not limited by geography, the agreement is limited to Vogelsang's clients with whom she had worked in the preceding two years.

A number of courts have held that a non-compete covenant that is limited to the employee's clients is a reasonable alternative to a geographical limit. *Stocks v. Banner Am. Corp.,* 599 S.W.2d 665, 666–68 (Tex.Civ.App.-Texarkana 1980, no writ) (stating that "[t]he use of a customer list as an alternative to setting a specific geographical limit is a reasonable means of enforcing a covenant not to compete"); *see also Totino v. Alexander & Assocs.,* 01–97–01204–CV, 1998 WL 552818, at *4 (Tex. App.-Houston [1st Dist.] Aug. 20, 1998, no pet.) (relying on *Stocks* and concluding that "trial court did not abuse its discretion in implicitly finding the noncompeti-

tion covenants contained a reasonable geographic restriction as written by virtue of their limiting the restriction" to certain clients who were defined in agreement); *Investors Diversified Servs. v. McElroy*, 645 S.W.2d 338, 339 (Tex.App.-Corpus Christi 1982, no writ) (concluding that non-competition covenant which had one year restraint, and "the restriction was limited to 150 current customers of the [employer], with whom the [employee] had contacted or dealt with" was reasonable). Moreover, a two year restraint is not unreasonable because the evidence showed that insurance contracts lasted for a year. Two to five years has repeatedly been held as a reasonable time in a noncompetition agreement. *Arevalo v. Velvet Door, Inc.*, 508 S.W.2d 184, 186 (Tex.Civ.App.-El Paso 1974, writ ref'd n.r.e.); *Electronic Data Systems Corp. v. Powell*, 508 S.W.2d 137, 139 (Tex.Civ.App.-Dallas 1974, writ ref'd n.r.e.); *Weber v. Hesse Envelope Co.*, 342 S.W.2d 652, 656 (Tex.Civ.App.-Dallas 1960, no writ).

Here, the agreement is limited in time (two years), scope (all activities with clients Vogelsang worked with while employed by GHIS), and a reasonable alternative to geographical area. Unlike some covenants not to compete that preclude the employee from working in the same industry, the agreement here does not limit Vogelsang from working in the insurance business, and she can practice her livelihood anywhere in the world. However, she cannot work with her GHIS clients (approximately 80 according to GHIS) for two years. We conclude that the restraint used in this case does not impose a greater restraint that is necessary to protect GHIS's business interest. Accordingly, we conclude that the covenant not to compete is reasonable.

We sustain GHIS's sole issue on appeal.

## Conclusion

We reverse the trial court's order on summary judgment and render judgment that the non-compete covenant is enforceable, and we remand the cause for further proceedings.

Justice JENNINGS, dissenting.

TERRY JENNINGS, Justice, dissenting.

The majority erroneously concludes that appellant, Gallagher Healthcare Insurance Services ("GHIS"), "presented summary judgment evidence to show that its confidential information was an interest worthy of protection" in its breach of employment contract claim against appellee, Page M. Vogelsang. Thus, the majority errs in holding that the covenant-not-to-compete clause of the contract is enforceable and that the trial court erred in entering summary judgment in favor of Vogelsang. Accordingly, I respectfully dissent.

In Texas, an agreement not to compete is enforceable only if it is "ancillary to or part of an otherwise enforceable agreement at the time the agreement is made," imposes "limitations as to the time, geographical area, and scope of activity to be restrained that are reasonable," and does not "impose greater restraint than is necessary to protect the goodwill or other business interest" of the employer. TEX. BUS. & COMM.CODE ANN. § 15.50 (Vernon 2002). An agreement not to compete is unreasonable, and therefore unenforceable, when it is not necessary to protect a "legitimate business interest." *DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 684 (Tex.1990).

In support of its conclusion that the information that GHIS provided to Vogelsang is "protected confidential information," the majority relies upon the affidavit

testimony of the president of GHIS, Phillip E. Reischman, and emphasizes:

> According to its summary judgment evidence, GHIS's confidential information (1) took years to acquire; (2) is only shared with employees and agents of GHIS on a "need to know basis"; (3) is not "readily ascertainable by its competitors"; and (4) gives GHIS "a valuable competitive advantage in the insurance brokerage industry." Moreover, GHIS (1) spent substantial time and resources developing and acquiring the information and (2) takes reasonable precautions in preventing the disclosure of the confidential information.

However, GHIS's evidence, even the evidence emphasized by the majority above, does not establish that an agreement by Vogelsang not to compete with GHIS was "necessary to protect any legitimate business interest" or that "the necessity of such protection outweighs the hardship of [the] agreement" on Vogelsang. *See De-Santis,* 793 S.W.2d at 684.

In *DeSantis,* the Texas Supreme Court concluded that an agreement not to compete between DeSantis, an employee, and Wackenhut, his employer, was unreasonable and, therefore, unenforceable. *Id.* The court explained that because such agreements are restraints on trade, they are unenforceable unless they are "reasonable." *Id.* at 681. An agreement not to compete is not a reasonable restraint on trade unless (1) the agreement is ancillary to an otherwise valid transaction or relationship, (2) the restraint must not be greater than necessary to protect the promisee's legitimate interest, and (3) the promisee's need for the protection must not be outweighed by either the hardship to the promisor or any injury likely to the public. *Id.* at 681–82.

The legal issues in *DeSantis* involved whether the agreement not to compete was "necessary to protect some legitimate interest of Wackenhut, and whether that necessity was outweighed by the hardship of enforcement." *Id.* at 683. Wackenhut argued that its "confidential information" was "protectable" because "during his employ, DeSantis learned the identity of Wackenhut's customers, their special needs and requirements, and Wackenhut's pricing policies, cost factors and bidding strategies." *Id.* at 684. The court rejected Wackenhut's argument, explaining:

> ... [W]hile confidential information may be protected by an agreement not to compete, Wackenhut has failed to show that it needed such protection in this case. Wackenhut failed to show that its customers could not readily be identified by someone outside its employ, that such knowledge carried some competitive advantage, or that its customers' needs could not be ascertained simply by inquiry addressed to those customers themselves. Also, Wackenhut failed to show that its pricing policies and bidding strategies were uniquely developed, or that information about its prices and bids could not, again, be obtained from the customers themselves. There is no evidence that DeSantis ever took advantage of any knowledge he had of Wackenhut's cost factors in trying to outbid Wackenhut or woo away its customers. Wackenhut simply has not demonstrated a need to protect any confidential information by limiting DeSantis' right to compete.

*Id.*

Although the business jargon used by GHIS in its summary judgment evidence is somewhat more sophisticated than that used by Wackenhut in *DeSantis,* much of it is conclusory. *See id.* Additionally, GHIS, like Wackenhut, has not demonstrated a need to protect any confidential information by limiting Vogelsang's right

to compete. *See id.* Just because it took GHIS years to acquire and compile information about its customers and it shared this information with employees and agents of GHIS only on a "need to know basis" does not make the information "protectable." Nor does the fact that the compilation of the information somehow gives GHIS a competitive advantage make the information "protectable."

The critically important fact remains that GHIS has not demonstrated that the identity of its customers and the information about its customers cannot readily be obtained by others outside of GHIS. *See id.* Nor has GHIS demonstrated that the information about its customers cannot be "ascertained simply by inquiry addressed to the customers themselves." *See id.* Also, like Wackenhut, GHIS has not shown that information about its prices cannot be obtained from the customers themselves. *See id.* Moreover, GHIS did not offer evidence explaining how its compiled information gives it a competitive advantage or that Vogelsang has actually used any of the compiled information. *See id.*

Thus, the summary judgment evidence does not establish that GHIS's "confidential information" is worthy of protection and that the non-compete agreement between Vogelsang and GHIS is necessary to protect a legitimate business interest of GHIS. Accordingly, I would hold that GHIS has not established that the agreement not to compete is reasonable and therefore enforceable. *See id.; see also* TEX. BUS. & COMM.CODE ANN. § 15.50. I would further hold that the trial court did not err in granting summary judgment in favor of Vogelsang, and I would affirm the judgment of the trial court.